**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 24 B 10780 |
| SILVETTE E. WEAVER | ) | |
| | ) | |
| Debtor. | ) | Chapter 13 |
| | ) | |
| | ) | |
| | ) | Hon. Janet S. Baer |
| | ) | |

**NOTICE OF OBJECTION BY DEBTOR SILVETTE E. WEAVER TO CERTAIN
RELIEF REQUESTED BY CREDITOR SANTANDER CONSUMER USA INC. IN ITS
MOTION FOR RELIEF FROM STAY AND REQUEST FOR ACCOUNTING TO BE
FILED TOGETHER WITH AMENDED CLAIM FOLLOWING SALE OF VEHICLE**

VIA ELECTRONIC NOTICE:

To:     Glenn B. Stearns (Trustee)
        801 Warrenville Road, Suite 650
        Lisle, IL  60532

        Cari A. Kauffman (Counsel for Santander)
        Sorman & Frankel, Ltd.
        180 North LaSalle Street, Suite 2700
        Chicago, IL  60601

        Please take Notice that on February 21, 2025, at 9:30 a.m., I will appear before the
Honorable Janet S. Baer, or any judge sitting in that judge's place, either in courtroom 615 of the
Dirksen U.S. Courthouse at 219 South Dearborn, Chicago, Illinois, or electronically as described
below, and present the Objection of the Debtor, SILVETTE E. WEAVER, ("Weaver"), to certain
relief requested by Creditor Santander Consumer USA Inc. ("Santander").

                                        Respectfully submitted,

                                        _____
                                        Maura G. Zalc

THE ZALC LAW FIRM, LLC
Maura G. Zalc #6307384
Attorneys for the Debtor
1755 S. Naperville Road, Ste 100
Wheaton, IL  60189
630/871-3301
Maura@ZalcLaw.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that I have served a copy of this Notice along with the attached Objection upon the above-named persons by electronic filing or, as noted above, by placing the same in a properly addressed and sealed envelope, postage prepaid, and depositing it in the United States Mail at 1755 S. Naperville Road, Wheaton, Illinois on February 14, 2025, before the hour of 5:00 p.m.

/s/ Maura G. Zalc

## OBJECTION OF DEBTOR SILVETTE E. WEAVER TO CERTAIN RELIEF REQUESTED BY CREDITOR SANTANDER CONSUMER USA INC. IN ITS MOTION FOR RELIEF FROM STAY AND REQUEST FOR ACCOUNTING TO BE FILED TOGETHER WITH AMENDED CLAIM FOLLOWING SALE OF VEHICLE

NOW COMES the Debtor, SILVETTE E. WEAVER, ("Weaver"), by and through her attorneys, THE ZALC LAW FIRM, LLC, and submits the within Objection to certain relief requested by creditor Santander Consumer USA Inc. ("Santander"), as well as for an Accounting to be Filed Together with Santander's Amended Claim Following the Sale of the Vehicle, and in support thereof, states as follows:

### I.    Santander Has Misrepresented Events Leading Up to Current State of Affairs

Weaver agrees with Santander's allegations that its claim is being paid through her confirmed Chapter 13 plan. Weaver would additionally point out that the claim is currently being paid via a Bankruptcy Code Section 1322 "cramdown", in which, after Santander filed an Objection to Weaver's earlier plan, the parties agreed that the vehicle had a retail value of $5,500.00, which amount would be paid at the approximate Till rate of 11.50%, with the remainder of the $8,690.66 loan balance, as of the time of confirmation, to be paid at the general unsecured rate of 3.5%. (**Exhibit A** – Document 27 – Plan of 10/23/24 with Order Confirming Plan dated 10/30/24)

Weaver disagrees with Santander's allegation that she "caused the vehicle to be impounded at Auto Tech & Transmission".  Rather, shortly after plan confirmation, the vehicle's transmission was the subject of a catastrophic failure, and it was determined by the mechanics at Auto Tech & Transmission that the vehicle was a "total loss", and not worth fixing. As such, Weaver wanted to surrender the vehicle to Santander, and since the same was already the subject of a confirmed Chapter 13 plan, appropriately went through her counsel for the same. Given the concern over possible storage fees, Weaver's counsel followed up several times with counsel for Santander, who in turn followed up with her own client, until the vehicle was successfully retrieved from Auto Tech & Transmission on December 9, 2024. (**Exhibit B**, tow truck receipt dated 12/9/24, and **Exhibit C**,  – email exchange with counsel for Santander advising of surrender, requesting advice as to what Santander would like done with the salvage, (Weaver offered to sell it herself in order to expedite the process), and advice received in response that Santander would handle everything in-house, and Weaver should simply keep her eyes open for an amended claim).

Weaver, however, received the wrong form letter from Santander. (**Exhibit D–** Santander letter of 12/11/24).  As can be seen from this letter, this is the form letter commonly sent out in vehicle "Repossession" cases – when individuals have stopped making payments on vehicles, and certain rights and responsibilities, both contractual as well as imposed by the state of Illinois under 810 ILCS 5/ - Uniform Commercial Code – apply.  In the current matter there was no incident of default whatsoever – the vehicle was included in the plan, and at all times insured. (**Exhibit E** - email of 9/22/24 to counsel for Santander providing proof of insurance, with attached Declaration page)

Counsel for Weaver sent Santander a letter directly, copying its counsel on the same, and advised the wrong form letter had been sent, as this was not a repossession case, and Santander had not suffered any interruption in payments.  Counsel again asked that the vehicle be speedily disposed of, and an amended claim be filed. (**Exhibit F** – 12/20/24 letter to Santander)

**II.      Santander Has Flatly Misrepresented to Its Own Counsel and This Court the Status of Weaver's Insurance on the Vehicle.**

At paragraph 6 of its brief, Santander alleges "Debtor has failed to provide Santander or its counsel with proof of a valid full coverage insurance policy for the Vehicle identifying Santander as the lienholder/loss payee." As shown in **Exhibit E**, above, proof of then - current insurance was sent to Santander's counsel on 9/22/24, when an objection was lodged to confirmation of the plan.  The best evidence, however, of Santander's full knowledge of the fact that Weaver has at all times maintained insurance on the vehicle is the fact that Santander actually filed a claim under Weaver's insurance policy <u>after</u> picking up the same, reporting the date of loss was 12/10/24, the day after they picked up the vehicle. (**Exhibit G** – Geico Estimate) As of the date of the filing of the instant objection, the claim for payment has still not been submitted by Santander, however, to Weaver's knowledge the claim is being honored under her policy of insurance.

**III.      As Santander Has Been Less Than Honest With This Honorable Court In Its Representations Up Until the Present Time, Weaver Requests That It Be Required To Show Strict Compliance With State Law Requirements For The Disposition of Collateral Prior to Filing a Claim for Any Unsecured Loan Balance.**

Weaver is entitled to surrender a vehicle in her Chapter 13 Plan, and has done so. Santander has accepted that surrendered vehicle. (**Exhibit B** – tow truck receipt)  Santander has certain responsibilities under state law which were triggered once it took possession of the vehicle, which to date it has been apparently ignoring.  Weaver has already attempted to point

out, without success, that this is not a case of default, and the statutes pertaining to repossession, with its attendant waiting periods to allow for redemption, etc., do not apply. Rather, the UCC statute (adopted by Illinois) applying to voluntary surrender is the applicable statute, and it plainly states:

810 ILCS 5/9-620 Acceptance of collateral in full or partial satisfaction of obligation; compulsory disposition of collateral.

(g) No partial satisfaction in consumer transaction. In a consumer transaction, a secured party may not accept collateral in partial satisfaction of the obligation it secures.

(Source: P.A. 103-1036, eff. 1-1-25.)

Santander must sell the van – it does not have the option to keep it, and certainly does not have the option to keep it indefinitely, accruing storage charges. See *First American Bank v. Poplar Creek, LLC*, et al., 2024 IL App (1st) 230551. Prior to filing a claim for any unsecured deficiency balance in Weaver's Chapter 13 plan, therefore, Santander must sell the van, and apply a credit for the sale of the collateral.

Weaver would point out that the van appears not to be in a storage lot at the present time, but is rather located at Manheim Auto Auction in Indiana. It is unclear whether it is being prepared for sale by Santander or has already been sold and is being prepared for a resale. (**Exhibit G** – Geico Estimate, at top – inspection location) Under either scenario, Weaver would object to any demand that she be required to pay for storage charges over such an extended period of time, as Santander has been perhaps deliberately operating under the assumption that repossession statutes apply, granting them extended periods of time in which to store the vehicle while redemption periods pass, despite the efforts of Weaver's counsel to notify it to the contrary.

    a. <u>Weaver Requests Santander Be Compelled to File a Sale Accounting Together with Its Amended Claim.</u>

The Illinois Uniform Commercial Code provides:

**Sec. 9-614 Contents and form of notification before disposition of collateral: consumer goods transaction.**  (provides the following) In a consumer-goods transaction, the following rules apply:

1.    A notification of disposition must provide the following information:

(A)    The information specified in Sec. 9-613(1) (The contents of a notification of disposition are sufficient if the notification:

    (A)    Describes the debtor and the secured party;
    (B)    Describes the collateral that is the subject of the intended disposition;
    (C)    States the method of intended disposition;
    (D)    States that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and
    (E)    States the time and place of a public disposition or the time after which any other disposition is to be made)

(B)    A description of any liability for a deficiency of the person to which notification is sent;

(C)    A telephone number from which the amount that must be paid to the secured party to redeem the collateral under Section 9-623 is available; and

(D)    A telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available.

The Illinois Uniform Commercial Code provides at paragraph 5 of 810 ILCS 5/9-613:

The following form of notification and the form appearing in Section 9-614(4), when completed,

each provides sufficient information:

NOTIFICATION OF DISPOSITION OF COLLATERAL

To:……..(Name of debtor, obligor, or other person to which the notification is sent)

From:…..(Name, address, and telephone number of secured party)

Name of Debtor(s):…..

**For a public disposition**: (emphasis provided)

We will sell or lease or license, as applicable, the …(describe collateral) to the highest qualified bidder in public (emphasis provided) as follows:

Day and Date:…..

Time:…..

Place:….

**For a private disposition**: (emphasis provided)

We will sell (or lease or license, as applicable) the ……(describe collateral) privately sometime after (emphasis provided)….(day and date).

The reason for the U.C.C.'s Notice requirement is to provide a safeguard for the borrower.  Applying Illinois law, the court in *Wilmington Trust Co. v. Conner* (Del. 1980), 415 A.2d 773, 776 (cited in *Boender v. Chicago North Clubhouse Ass'n, Inc.*, 608 N.E.2d 207, 240 Ill.App.3d 622 (Ill.App.1 Dist., 1992) stated:  "The purpose of the requirement of 'reasonable notification' is threefold: (1) it gives the debtor the opportunity to exercise his redemption rights under section 9-506 (not applicable in the present case); (2) it affords the debtor an opportunity to seek out buyers for the collateral; and (3) it allows the debtor to oversee every aspect of the disposition, thus maximizing the probability that a fair sale price will be obtained.  Any aspect of the notice that is contrary to these provisions necessarily prevents it from being 'reasonable notification'. (emphasis provided) *Id*. at 213-214.

Therefore, as a part of the accounting Santander is to provide, Weaver wishes to see the Notices, as to date, she has been provided with none (unless the "notice" of a private sale in the incorrect "Repossession" letter is to be eventually argued as constituting adequate Notice in this voluntary surrender case). Absent proof of the proper Notices having been sent, Santander is barred from filing an amended claim for any alleged deficiency balance.

The statutory language, set forth above, (ILCS 9-614) produces the same result as the contractual language found in Weaver's sales contract.  In *Robinson v. Ford Motor Credit*, 706 F.Supp. 606 (N.D. Ill.1989) (applying state law) by letter dated May 4, 1987,  Robinson was given Notice of a private sale of repossessed collateral, a car, said sale to occur after May 27, 1987. Robinson thereafter filed a Chapter 13 bankruptcy, and the automatic stay provisions of bankruptcy went into effect. Confirmation of Robinson's Chapter 13 Plan was scheduled for August 14, 1987.  On August 14, 1987 adverse weather conditions prevented Robinson's attorney from traveling to the courthouse, and the bankruptcy case was dismissed, thereby lifting the automatic stay provisions.  On August 27, 1987, with no additional Notice to that provided by letter dated May 4, 1987, Ford sold the collateral at a private sale.

The court held that Notice under the earlier letter was adequate, as both sales contemplated were private, and in fact a private sale was carried out, regardless of the delay between the original letter and the ultimate sale.   The court noted that if the type of sale had changed in the intervening time, the conclusion would have been different:

> If the original notice had contemplated a public sale, or if the subsequent sale were a public  sale, the Court's conclusion would have been different. See Willard v. Northwest Nat. Bk., 137 Ill.App.3d 255, 92 Ill.Dec. 92, 484 N.E.2d 823 (1st Dist.1985) (notice of December 15 public sale date did not constitute reasonable notification of the sale which was delayed by a temporary judicial stay and which did not take place until over one month later on January 22). If the original notice advertised a public sale, the subsequent sale of the car by private sale would have been a different sale than the sale originally contemplated. See Staley, 66 Ill.Dec. at 806, 443 N.E.2d at 732. If the subsequent sale were a public sale, failure to notify the debtor of the new date would have prevented the debtor from attending the public sale and bidding on the collateral. But, in the instant case, where the debtor could not attend either private sale, the debtor was not prejudiced by his failure to receive additional notice.
>
> *Robinson* at 611.

In the instant case, again, Weaver would note that the van appears to be located at Manheim Auto Auction in Indiana.  She does not know if it has been sold once, twice, or not at all, to date, or in a private sale or at a public auction.  However, it is Santander's burden to provide strict proof of all Notices of its plans to sell the collateral, as set forth above.

## 810 ILCS 5/9-610 "Disposition of Collateral after Default".

### Violation of 810 ILCS 5/9-610 "Disposition of Collateral after default"

(a)  Disposition after default.  After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing.

(b)  Commercially reasonable disposition.  Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable.

*General Motors v. Stoval*, 872 N.E.2d 91, 374 Ill.App.3d 1064, 313 Ill.Dec. 331 (Ill. App. 2007) contains a discussion as to what constitutes a commercially reasonable sale, and concludes that to be considered commercially reasonable, the method of sale used must be calculated to recover the greatest amount of money for the vehicle sold at the lowest cost to the seller.

In the instant case therefore, Santander must be compelled to demonstrate how in the past nearly three months they have used this time to benefit the debtor, and recover the greatest amount of money for the vehicle sold at the lowest cost to it. Weaver concedes the vehicle required a tow from Auto Tech & Transmission, but she has been consistently requesting that the vehicle be speedily disposed of since that time, without response.  The tow bill does note no fees were required upon pick-up, again contrary to Santander's claim at paragraph four of its brief that "Santander recovered the vehicle from Auto Tech & Transmission LLC, paying required bailout fees and costs". **Exhibit B**, tow truck receipt dated 12/9/24.  Weaver is entitled to know to what the delays are owed, and how Santander plans to calculate any deficiency balance they plan to

claim in any amended claim. She is entitled to see the professional evaluations, NADA evaluation, auction advertisements, paid receipts, cancelled checks, and other information as to how it valued, conditioned, advertised and sold the 2016 Chrysler Town & Country minivan, and at what price it sold.   She is entitled to ascertain whether best efforts were used by Santander "recover the greatest amount of money for the vehicle sold at the lowest cost to the seller" before Santander may file a claim for any alleged deficiency balance owed.

"Section 9-504 provides the secured party the right to sell collateral after default (or in this case, voluntary surrender).  It imposes two requirements upon the selling secured party: first "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable", and second, "reasonable notification" must be sent to the debtor. *Boender v. Chicago North Clubhouse Ass'n, Inc.*, 608 N.E.2d 207, 240 Ill.App.3d 622 (Ill. App. 1 Dist., 1992 at 211, citing White & Summers, Uniform Commercial Code, section 25-9, at 1214 (3rd ed. 1988).  Moreover, "It is well established that the secured party is required to exercise due diligence to sell the collateral for the best price obtainable and to have a reasonable regard for the debtor's interest. *Id. at 212, citations omitted*.   "The court may consider the knowledge or capability of the secured party in examining the circumstances of the sale.  *Id. at 212, citations omitted*.  (no utilization of industry contacts or use of mailing lists).  Specifically, if potential buyers are identified and not advised of the auction, then there is a breach of duty by the secured party.  *Id. at 212, citations omitted*.

The cost of employing due diligence is a recoverable one, and therefore is no additional burden on Santander.  *See* 810 ILCS 5/9-615 "Application of proceeds of disposition, liability for deficiency and right to surplus. (a) Application of proceeds.  A secured party shall apply or pay over for application the cash proceeds of disposition in the following order to (1) the reasonable

expenses of retaking, holding, preparing for disposition, processing, and disposing….the collateral."

**c.  Is Santander Fails to Prove Its Damages, it is prevented as a Matter of Law From Filing a Claim for a Deficiency Balance.**

If Santander Cannot Prove its Compliance with the Duties of a Surrendered Collateral under 810 ILCS 5/9-610 "Disposition of Collateral after Default", and because Weaver has placed Compliance in Issue, 810 ILCS 5/9-626 Prevents Santander from Filing a Claim for a Deficiency Balance.

> Action in which deficiency or surplus is in issue; applicable rules if amount of deficiency or surplus is in issue.  In an action in which the amount of a deficiency or surplus is in issue, the following rules apply:
> ….
> **(2)    If the secured party's compliance is placed into issue, the secured party has the burden of establishing that the collection, enforcement, disposition, or acceptance was conducted in accordance with this Part.**
>
> **(3)    Except as otherwise provided in Section 9-628, if a secured party fails to prove that the collection, enforcement, disposition, or acceptance was conducted in accordance with the provisions of this Part relating to collection, enforcement, disposition, or acceptance, the liability of a debtor or a secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of:**
>
> **(A)    the proceeds of the collection, enforcement, disposition, or acceptance;**
>
> **Or**
>
> **(B)    the amount of proceeds that would have been realized had the noncomplying secured party proceeded in accordance with the provisions of this Part relating to collection, enforcement, disposition, or acceptance.**   (emphasis supplied)

If  in the instant case Santander is unable to sustain its burden of proof that its disposition of the subject collateral was carried out in accordance with the requirements of the Illinois Uniform Commercial Code, as set forth in the preceeding paragraphs, Santander  is limited to the "recovery" it has allegedly already acquired, or the 2016 Chrysler Town & Country van itself, and may not file a claim for any unsecured deficiency balance.  See *General Motors v. Stoval*, 872 N.E.2d 91,

374 Ill.App.3d 1064, 313 Ill.Dec. 331 (Ill. App. 2007), quoting *First Galesburg National Bank & Trust Co. v. Joannides*, 103 Ill.2d 294 (1984)

Therefore, since Santander has to date been less than honest as to what has transpired regarding an alleged "impoundment" of the vehicle, and a "lack of insurance" provided, Weaver respectfully requests the following:

That simultaneous with the filing of their amended Unsecured Claim, as Santander has now accepted the voluntary surrender of the 2016 Chrysler Town & Country van, it be compelled to provide to this Honorable Court and the Debtor and her counsel copies of the Notices sent of the sale, as well as a complete accounting of the sale, which will include an explanation of any delays in the preparations for sale, if storage charges are claimed, as well as a thorough calculation of Santander's claimed deficiency balance they plan to claim in any amended claim. Included shall be the proceeds of the insurance claim upon Weaver's insurance company, repair receipts, photographs, professional evaluations, NADA evaluations, auction advertisements, paid receipts, cancelled checks, and other information as to how the van was valued, conditioned, advertised and sold, and at what price it sold. Produced shall be proof as to whether best efforts were used by Santander to "recover the greatest amount of money for the vehicle sold at the lowest cost to the seller" before Santander may file a claim for any alleged deficiency balance owed after the sale of the collateral.

Respectfully submitted,

Maura G. Zalc

THE ZALC LAW FIRM, LLC
Maura G. Zalc #6307384
Attorneys for the Debtor
1755 S. Naperville Road, Ste 100
Wheaton, IL  60189
630/871-3301
Maura@ZalcLaw.com